## Sheaffer *v.* Eichenberg, Appellant.

*Contract—Conveyance of real estate—Agreement to reconvey—Default—Forfeiture.*

A forfeiture is abhorred in law as in equity, and where the rights of one of the parties will be injured by so declaring it, the courts will not be slow to seize on a reasonable opportunity to prevent the forfeiture.

An owner executed a deed of real estate to a person to whom she was indebted, and at the same time executed an agreement with the grantee by which she was permitted to retain possession of the real estate. In this agreement she covenanted to pay taxes, insurance, rent, repairs, etc., to the grantee and the whole of the debt on or before a date mentioned. If default should be made in paying the rent or taxes, or the principal sum, a stipulation on the

510, (1916).]      Syllabus—Charge of Court below.

part of the grantee to reconvey should be null and void, and for the collection of the rent a landlord's warrant might issue. It was also provided that if the charges were all paid and a portion of the principal, and the grantee should sell the property he was to account to the grantor for any difference between the proceeds and the balance of the claim due him. It was also provided that the agreement might be terminated by defendant giving six months' previous notice and demanding payment to the debt with all other claims if the agreement continued beyond the date previously mentioned. The grantor continued in possession of the property for several years after the date mentioned in the agreement. The grantor claimed that she had paid all the rent and other charges. This was denied by the grantee. The grantee claimed that he gave the six months' notice required by the agreement, but this was denied by the grantor. The grantee sold the property, claimed a forfeiture and refused to pay the difference between the purchase-price and the amount due him. *Held,* that the case was for the jury, and that a verdict and judgment for the grantor should be sustained.

*Contract—New agreement—Continuance after right to forfeit.*
Parties may, by a course of conduct subsequent to an agreement, substitute new provisions or change or alter an agreement already existing, or continue in life what otherwise would have been a forfeited right.

Argued Nov. 10, 1915.   Appeal, No. 263, Oct. T., 1915, by defendant, from judgment of C. P. Lancaster Co., June T., 1913, No. 61, on verdict for plaintiff in case of Leah M. Sheaffer v. S. U. Eichenberg.   Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Assumpsit to recover a portion of the proceeds of real estate.   Before LANDIS, P. J.

The court stated the facts in the charge which was in part as follows:

It is admitted that the plaintiff, Mrs. Sheaffer, was the owner of a house and lot of ground, located in the Township of Warwick, in this county. It is also admitted that, on November 9, 1907, she and her husband made a deed for the same to S. U. Eichenberg, the defendant.

At the same time the parties entered into articles of agreement, and these have been presented as evidence before you. The agreement, among other things, pro-vides as follows:

"Now, know all men by these presents, that when she, the said Leah M. Sheaffer, shall have paid unto the said S. U. Eichenberg the sum of nine hundred and twenty-four and 59-100 dollars ($924.59), lawful money of the United States, together with all taxes, rates, charges and assessments against the said property hereafter levied and assessed, and taxes, and charges of keeping and maintaining an insurance against fire upon the buildings and said premises, and shall have paid all rents equal to the interest on said principal sum, or any balance thereof, at six per cent. per annum, then the said S. U. Eichenberg shall and will, for and in con-sideration of the said sum of nine hundred and twenty-four and 59-100 dollars, and the taxes and rent as afore-said, at the proper costs and charges of the said Leah M. Sheaffer, her executors, administrators or assigns, by such deed of conveyance as he now holds of said premises, well and sufficiently grant, convey and assure unto the said Leah M. Sheaffer, her heirs and assigns, all that the said above-described tracts and premises. The said principal sum to be paid as follows, viz.: Six hundred and fifty and 59-100 dollars on or before April 1, 1908, and the balance of two hundred and seventy-four dollars remaining charged on the premises as a dower charge in favor of the heirs and legal representa-tives of Uriah Carpenter, deceased, as now fixed upon said premises.

"The rent (which is equal to the interest on said prin-cipal sum, as aforesaid, or balance thereof by reason of the advance payments to be made monthly as aforesaid) is to be paid unto the said S. U. Eichenberg, on the first day of each and every month in even sums of four and 6229 1-2-100 dollars each, up to April 1, 1908, together with the taxes as aforesaid, and the same shall consti-

tute the rental for the use and occupation of the premises aforesaid.

"Subject, however, to the condition, and it is hereby agreed by the said Leah M. Sheaffer, that she keep up at her own proper labor and expense all the repairs of said premises from time to time, as may be directed by the said S. U. Eichenberg, and pay all taxes, rates, charges and assessments against said property hereafter levied and assessed, and all taxes and charge of keeping and maintaining an insurance against fire upon the buildings of said premises whenever due, and the same shall be considered due as soon as the proper duplicate for said taxes, etc., shall be in the hands of the collectors of the same.

"Provided, however, and it is expressly agreed that, if default shall be made at any time by the said Leah M. Sheaffer to pay unto the said S. U. Eichenberg the several amounts whenever due, either of said rental, or said principal sum, as aforesaid, or the taxes as aforesaid, then the foregoing contract of sale shall cease and become absolutely null and void, to all intents and purposes, and payment of the said rent, and taxes as aforesaid, due and unpaid, may at the option of the said S. U. Eichenberg, be enforced and recovered at once, by landlord's warrant to distrain the goods and chattels of the said Leah M. Sheaffer, by distress in the usual manner for the nonpayment of rent (or such other proceedings for the collection of the same as may in the discretion of the said S. U. Eichenberg be deemed proper), under all of which processes or proceedings she hereby waives the benefit of all exemption laws, and furthermore, the said S. U. Eichenberg, his executors, administrators or assigns, shall be at liberty, without further notice, to sell and dispose of said premises either at public or private sale, the same as if this agreement had never been made, anything to the contrary notwithstanding."

Mrs. Sheaffer did not pay to Eichenberg $650.59, or

any part of it, and she did not, nor was she in a position to, demand a deed for the property. It will be seen that, owing to this, no question as to the reconveyance of the land to Mrs. Sheaffer can or does arise in this case. But the agreement also provides:

"Provided, however, in case the said Leah M. Sheaffer shall have made advance payments on said principal sum of nine hundred and twenty-four and 59-100 dollars at any time as aforesaid, and the said S. U. Eichenberg should sell the said property for more than the balance of said principal sum and all taxes, rents, etc., due, the said S. U. Eichenberg, after satisfying and deducting all his claims, demands, costs and expenses,—including all attorney's fees paid by him,—against the said Leah M. Sheaffer, agrees to pay over unto her, the said Leah M. Sheaffer, the balance of money, if any, so remaining from such sales. And in case of such sales as aforesaid, the said Leah M. Sheaffer hereby agrees to surrender the said premises peacefully and quietly, and she hereby authorizes and empowers any attorney-at-law of any Court of Record in the State of Pennsylvania or elsewhere, to appear in said court and confess a judgment, or judgments, in ejectment for the premises above described, with costs of suit and ten per cent. attorney's commission, or fees, and process issued on such judgment for the recovery of said premises under such writ forthwith, and she hereby waives all rights that she may have against such writ, and further waives all rights to claim any damages for or by reason of the issuing and executing of said writ," and so forth.

"Eichenberg, on April 1, 1913, sold and deeded this property to Ervin R. Miller. Miller paid for it the sum of $1,226.00 in cash, and the dower of $274.00 remained charged upon the premises. The plaintiff now claims that Eichenberg, under this agreement, must account to her for the amount which he thus received from the sale of the property, less the amount fixed in the agreement,

and also such rent, taxes, insurance, and so forth, which remain due and which she has failed to pay."

No portion of the principal sum was paid and there was a contradiction of testimony as to whether the rent and taxes had all been paid.   There was also a conflict of testimony as to whether the defendant had served six months' notice on the plaintiff.

The jury returned a verdict in favor of the plaintiff for $279.36, and also found specially that the six months' notice had not been served upon the plaintiff.   Judgment was entered upon the verdict.

*Error assigned* among others was in discharging rule for judgment for defendant n. o. v.

*H. Frank Eshleman,* for appellant.—The default on April 1, 1908, lost to appellee all rights in the property; and all that happened afterwards, was a tenancy at will, not giving appellee any interest in the premises or in its proceeds.

*John E. Malone,* with him *Amos E. Burkholder,* for appellee.—"Although in an agreement for the payment of money time may be made material by express stipulation, yet where there has been no change in conditions which places the lender in a worse position and his loss may be measured and compensated for by the payment of interest, a forfeiture will not be allowed": King's Est., 215 Pa. 59; Weaver v. Griffith, 210 Pa. 13.

OPINION BY KEPHART, J., March 1, 1916:

The plaintiff was the owner of a house and lot of ground in Lancaster County.   On November 9, 1907, being indebted to the defendant she and her husband made a deed of conveyance to the defendant, and at the same time entered into an agreement out of which the present controversy arises.   The agreement provided that when the plaintiff had paid to the defendant the

sum of $924.59, with all tax rates, charges and assessments against the property, and the charges for keeping an insurance against fire upon the buildings, and also paid all rents equal to the interest on the principal sum, the defendant should reconvey the said property to the plaintiff, her heirs and assigns. The principal sum was $650.59 and was to be paid before April, 1908; the balance was to remain as a dower charge. The rent during the period from November until April was to be paid on the first of each month. It was agreed that the plaintiff was to keep up at her own expenses the repairs to the said premises. It was expressly agreed that if default should be made at any time by the plaintiff in paying the rental or the principal sum or the taxes, then the contract of sale should become absolutely null and void, and for the collection of the rent it was provided that a landlord's warrant might be issued. A second proviso stipulated that in case the rent and all charges had been paid and a portion of the principal had been paid by the plaintiff and the defendant should sell the property to someone other than the plaintiff, then he was to account to the plaintiff for any difference between the purchase price and the balance of the claims which the defendant had against her. The third provision, and the one which is the most difficult, provides that the agreement may be terminated by the defendant giving six months' previous notice and demanding payment of the said principal sum, with all other claims and demands thereunder, if this agreement continued beyond April 1, 1908. By the terms of the agreement, there was but one method to continue beyond April 1, 1908, and that was by advance payments; and had there been a default on April 1, 1908, with no subsequent dealings between the parties to continue the contract, or no act of the defendant which might constitute a waiver, then the defendant without notice could have sold the property without being liable to the plaintiff. Appellant urges that all plaintiff's rights under the contract were forfeited. A forfeiture

is abhorred in law as in equity, and where the rights of one of the parties will be injured by so declaring it, courts will not be slow to seize on a reasonable opportunity to prevent the forfeiture. "Where a contract provides 'in case the said party of the second part doth not make payment as above specified at the time herein stated then this agreement is to be null and void and all parties are to be released from all liabilities herein and all money previously paid forfeited,' a failure to make the payments at the stipulated time does not of its own force, terminate the contract. The seller must declare the forfeiture and if he fails to do so and retains the right to enforce the contract against the purchaser to buy, he equally keeps alive his own obligation to sell." Weaver v. Griffith, 210 Pa. 13; King's Est., 215 Pa. 59. The appellant continued the appellee in the possession of the property for a long period of time after April 1, 1908, and so conducted himself with relation to the contract which with the reasons underlying its execution were sufficient to submit to the jury the question as to whether or not there was a waiver of the right to forfeit on April 1, 1908. There is an abundance of authority that the parties may, by a course of conduct subsequent to an agreement, substitute new provisions or change or alter an agreement already existing, or continue in life what otherwise would have been a forfeited right. Assuming then that the agreement was continued, what rights did this appellee have? The appellant contends that the provision as to the failure to pay the rent mentioned in the first proviso created such a condition as permitted him to sell without the six months' notice; but here we are met with the plaintiff's testimony that she paid the rent, taxes, repairs, and insurance and we cannot determine from the verdict that the jury did not so find; and further, the defendant could have distrained for the balance of the rent due, which right he did not see fit to exercise. Whatever may have been his right to distrain for the rent, if the appellant had permitted the appellee

to become in arrears in rent he could only annul the contract of sale by giving the six months' notice. She was thus given a chance to redeem the property in case she so desired. If the plaintiff paid the rent as she testified to, of course, there can be no question that the contract to sell was not dead. This six months' notice was not effective only in case of advance payments made before April 1, 1908, as mentioned in the second provision of the contract; that the contrary was intended may be taken from the language used in connection with this notice "demanding payment of said principal sum with all other claims and demands if this agreement continue beyond April 1, 1908." He realized that his contract could not be avoided except by giving this notice, as he attempts to show by his evidence that he did give it; but the jury found adversely to this testimony. When the agreement was continued beyond April 1st plaintiff must be given an opportunity to repurchase the property. That right was denied her and she now claims the difference between the sale made and the amount due to the defendant, and the jury fixed that sum at $279.00, after deducting all of the defendant's claim. As to the method adopted in arriving at this particular sum, no request was made by counsel for any different measure of damages or method of ascertaining the sum due to the plaintiff, and as the case was tried out on the theory of accounting, this court will not disturb that result. The defendant submitted a counterclaim as against the amount claimed by the plaintiff, which counterclaim exceeded the price at which the property was subsequently sold; it was apparently his intention to treat the contract as assuring to the defendant that all he desired was reimbursement after all his claims had been paid.

The question of jurisdiction was not raised in the court below at the arguments in this court nor in the paper books and is not passed upon.

The assignments of error are overruled and the judgment is affirmed.